Tagged opinion

ORDERED in the Southern District of Florida on August 21, 2008



*Signature*
John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

JODI B. HUSSEY and
MARK A. HUSSEY,

    Debtors.

Case No. 05-30361-BKC-JKO

Chapter 7

ORDER DENYING MARY ALICE GWYNN'S
MOTION TO RECUSE BANKRUPTCY JUDGE

THIS CASE is before me on the Verified Motion for Recusal of the Honorable John K. Olson Pursuant to Bankruptcy Rule 5004, 28 U.S.C. § 144 and § 144 (the "Recusal Motion") [DE 299] filed November 30, 2007, by Mary Alice Gwynn ("Ms. Gwynn"), purportedly[1] as a creditor of these chapter 7 debtors, and on Mary Alice Gwynn's Response to the Court's Order on Ms. Gwynn's

---

[1] Ms. Gwynn is not a creditor of these debtors. Rather, Mary Alice Gwynn, P.A., a Florida professional services corporation ("Gwynn, P.A.") is a creditor of these debtors by virtue of Proof of Claim 18-1 filed in this case on January 5, 2006. Both the proof of claim form and the contract attached to it make clear that the creditor here is Gwynn, P.A. and not Ms. Gwynn individually.

Purported Compliance with Practice Requirements and Supplement to Mary Alice Gwynn's Motion for Recusal [DE 311], filed December 11, 2007 (the "Supplemental Motion," and together with the Recusal Motion, the "Recusal Motions").

I conducted a hearing on the Recusal Motions on December 17, 2007, and denied them on the record. An exerpted transcript of the relevant portion of that hearing was filed on May 7, 2008, as Docket Entry 322. This Order memorializes my reasons for denying the Recusal Motions.

I.   **Background**

I inherited this case pursuant to Chief Judge Hyman's Order Transferring Case [DE 278] entered October 30, 2007.[2] That Order was entered after Ms. Gwynn filed her Emergency Motion to Disqualify and Request to Stay Proceedings (the "Emergency Motion") [DE 276], filed October 29, 2007. In the Order Transferring Case, Judge Hyman correctly ruled that no basis for his disqualification had been stated but that judicial efficiency suggested that it was appropriate to transfer this case to me because a related corporate case, *In re It's All in the Style, Inc.,* Case No. 05-30362, had been transferred to me in August 2007.

In the Emergency Motion, Ms. Gwynn sought two distinct forms of relief. First, she sought entry of an order disqualifying Chief Judge Hyman from further presiding in this case and to transfer the case to me. Second, she sought a stay of all proceedings in this case pending determination of an appeal now pending in the United States Court of Appeals for the Eleventh Circuit. I conducted a hearing on the Emergency Motion on November 7, 2007, and entered an Order denying the relief sought on November 9, 2007 [DE 285], published as *In re Hussey,* 378 B.R. 397 (Bankr. S.D. Fla.

---

[2]This case was before Judge Steven H. Freedman from its filing on January 26, 2005, until September 28, 2007, when it was reassigned to Chief Judge Hyman, who presided over it for one month.

2

2007). I denied the Emergency Motion as moot to the extent that it sought Judge Hyman's disqualification and denied the balance of the Emergency Motion on the merits.

The matters giving rise to the Recusal Motions all occurred at the hearing on the Emergency Motion on November 7, 2007, and chiefly arise out of colloquy between Ms. Gwynn and me at that hearing relating to her non-compliance with the Local Rules of this Court. A transcript of that hearing is found at Docket Entry 289 and portions of it are contained in the Recusal Motion.

As I ruled in the Order denying the Emergency Motion, Ms. Gwynn's pleadings in this case which were then before me did not bear either of the alternative certifications required under this Court's then-applicable[3] Local Rule 9011-4, which provided in relevant part as follows:

> **(A) Identification of Attorney.** In the signature block of all court papers signed by an attorney, the attorney must be identified by name, state bar number, complete mailing address, telephone number and the name of the party who [sic] the attorney represents.
>
> **(B) Certification of Attorney.** Papers filed by an attorney appearing:
>
> (1) as a qualified attorney pursuant to Local Rule 2090-1(A) must contain this certification: "I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A)." ....
>
> (2) pro hac vice pursuant to Local Rule 2090-1(B)(2) must contain this certification: "I hereby certify that the undersigned attorney is appearing pro hac vice in this matter pursuant to court order dated (date)." This certification shall be placed in papers in the locations described in subdivision (1) above.

In turn, Local Rule 2090-1 provides in relevant part:

---

[3]Substantially revised Local Rules are in effect as of June 1, 2008. The changes to the Local Rules which are relevant to this case are not material and would not affect the outcome.

3

**Rule 2090-1. Attorneys.**

**(A) Qualifications to Practice.** Except as provided in subdivision (B) of this rule, to be qualified to practice in this court an attorney must:

- (1) be a member of the Bar of the United States District Court for the Southern District of Florida under the Special Rules Governing the Admission and Practice of Attorneys in the District Court;

- (2) read and remain familiar with these rules, administrative orders, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Florida Bar's Rules of Professional Conduct, and the Bankruptcy Code; and

- (3) earn at least 12 credit hours from The Florida Bar for attending or participating in CLE courses related to the subject area of "Bankruptcy Law" during each attorney's Florida Bar three-year CLE reporting requirement. This provision will not preclude an attorney from appearing who is within a three-year CLE reporting period but who has not yet earned the required 12 hours for that period.

Attorneys appearing pursuant to this subdivision must include on all papers the certification contained in Local Rule 9011-4(B).

**(B) Appearances Permitted as Exceptions to Qualification Requirements.** An attorney who has not fulfilled the qualifications to practice set forth in subdivision (A) above may only appear as set forth in this subdivision. Any attorney who appears pursuant to this rule shall be deemed to be familiar with, and shall be governed by, these rules, and the Rules of Professional Conduct and other ethical limitations or requirements governing the professional behavior of members of The Florida Bar.

- (1) **Appearances in Limited Instances.** [Inapplicable here].

- (2) **Pro Hac Vice Appearances.** Any attorney who is a member in good standing of the bar of any state or territory or insular possession of the United States, but is not admitted to practice in the United States District Court for the Southern District of Florida and qualified to practice before this court may, upon the filing and this court's approval of the Local Form "Motion to Appear Pro Hac Vice" and proposed Local Form "Order Admitted Attorney Pro Hac Vice", be

>permitted to appear and participate in a particular case or proceeding. The motion shall designate an attorney who is qualified to practice in this court and who maintains an office in this district for the practice of law with whom the court and opposing counsel may readily communicate regarding the conduct of the case or proceeding and upon whom papers shall be served. The motion must be accompanied by a written statement of the local attorney who consented to the designation, and the name, address and telephone number of the named designee. The motion shall (a) indicate all bars or courts to which the attorney is admitted; (b) indicate all bars or courts, if any, from which the visiting attorney has been disbarred, suspended or prohibited from appearing in front of and the dates of the foregoing; and (c) certify that the visiting attorney is familiar with and shall be governed by these rules, the Rules of Professional Conduct and all other requirements governing the professional behavior of members of The Florida Bar. Visiting attorneys appearing under this subdivision shall include on all papers filed with the court the certification contained in Local Rule 9011-4(B)(2). Upon written motion and for good cause shown, the court may waive or modify the requirements of designation of qualified local counsel.

In light of these requirements contained in the Local Rules, it was surprising to me that the Emergency Motion contained neither of the alternative certifications mandated by Local Rule 9011-4(A) or Local Rule 9011-4(B)(2). When I raised the absence of either certification with Ms. Gwynn, she asserted – falsely – that she was representing herself and appearing before me *pro se*. As noted in footnote 1 above, Ms. Gwynn individually is not a creditor of these Debtors. Proof of Claim 18-1 was filed by Gwynn, P.A., and both the proof of claim form and the underlying contract on which it is based so indicate.

Local Rule 9010-1(B)(1) prohibits corporations from appearing in proceedings in this Court except in limited circumstances. The Rule provides:

>(1) **Corporations and Other Business Entities.** A corporation, partnership, trust, or other business entity cannot appear or act on its own behalf without counsel in a case or proceeding, except to file a request for service of notices (pursuant to Bankruptcy Rule 2002), a proof of claim, a response to an

5

>objection to its claim, or a ballot, or to attend and inquire at the meeting of creditors held under 11 U.S.C. § 341.

It is clear that the Emergency Motion did not fall within any of the exceptions to Local Rule 9010-1(B)(1). Thus, under the Local Rules, Gwynn, P.A. could only appear by an attorney authorized to practice in this Court under Local Rule 2090-1.

Local Rule 9010-1(B)(1) is completely consistent with the very long-standing rule that corporations and other artificial entities can act only through their agents, cannot appear *pro se,* and must be represented by counsel. *Commercial & Railroad Bank of Vicksburg v. Slocomb,* 39 U.S. (14 Pet.) 60 (1840); *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738 (1824); *Palazzo v. Gulf Oil Corporation,* 764 F.2d 1381, 1385-86 (11th Cir. 1985); *In re K.M.A., Inc.,* 652 F.2d 398 (5th Cir. Unit B 1981); *In re Las Colinas Development Corp.,* 585 F.2d 7 (1st Cir. 1978). There is simply no question that a corporation cannot be represented by someone who is not an authorized attorney, even if that person is the president and sole shareholder of the corporation. *Palazzo, supra; Las Colinas, supra.*

The question here is whether Ms. Gwynn, despite her failure to certify to her qualification to practice in this Court, is an attorney who could represent Gwynn, P.A., in this case.

I took at face value Ms. Gwynn's statement to me at the hearing on November 7, 2007, that my questioning her ability to act in this case took her by surprise. It was for that reason that I allowed her to proceed with argument on the substance of the Motion; I did not want to prejudice any substantive rights because of a procedural failure. It was nonetheless necessary to deal with the question as to whether Ms. Gwynn could represent Gwynn, P.A. going forward.

I concluded that Ms. Gwynn could not then represent Gwynn, P.A. in this case. In a very detailed order [DE 1553] entered on June 7, 2006, in another case in this District, *In re Walker,* Case No. 03-32158-BKC-PGH, Chief Judge Hyman prohibited Gwynn from acting as an attorney in any case in this Court until she establishes the minimal qualifications to do so which are required by this Court's Local Rules. Specifically, the decretal paragraphs of that Order [DE 1553] provides:

> The Court, having reviewed the Response, the Sworn Certification, the docket in this case, having observed Gwynn's conduct in this Court during the past three years, and being otherwise fully advised in the premises, hereby:
>
> **ORDERS AND ADJUDGES** that Gwynn shall be prohibited from representing any parties before the United States Bankruptcy Court for the Southern District of Florida until she earns 12 credit hours from the Florida Bar for attending or participating in CLE courses related to the subject area of "Bankruptcy Law" which shall mean courses directly related to Title 11 of the United States Code and the Bankruptcy Rules of Procedure.

At the November 7, 2007, hearing on the Emergency Motion, I asked Ms. Gwynn if she had taken any CLE courses in the area of bankruptcy law. She informed me that she had taken five hours of such courses. Manifestly, therefore, she had failed as of that date to comply with the condition precedent imposed by *In re Walker* that she obtain 12 CLE credit hours from The Florida Bar before she may represent any party in this Court. Thus, not only had Ms. Gwynn failed to comply with the requirements of Local Rules 2090-1 and 9011-4, but she had also failed to comply with the requirements of a valid Order of this Court which had not (and has not) been stayed or reversed on appeal. She has also acknowledged by her own representation made to me at the hearing on the Emergency Motion that she did not then satisfy the minimal practice requirements set forth in Local Rule 2090-1(A)(3). I therefore concluded that Ms. Gwynn could not represent Gwynn, P.A. until and unless she is in full compliance with the Local Rules and with the mandate of Chief Judge

7

Hyman in *In re Walker*. *See* [DE 1553] in *Walker*. Given what Chief Judge Hyman found in *Walker* was her gross unfamiliarity "with the Court's Local Rules, administrative orders, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Evidence, The Florida Bar's Rules of Professional Conduct,[4] and the Bankruptcy Code," I prohibited Ms. Gwynn from filing any pleading or representing any party in any case in the United States Bankruptcy Court for the Southern District of Florida (other than appearances expressly permitted under Local Rule 2090-1(B)(1) "Appearances in Limited Instances") until such time as she provided to me a certified record from The Florida Bar which establishes that she has completed at least 12 hours of Florida Bar approved CLE courses in the area of Bankruptcy Law.

The Recusal Motions assert that my questioning of Ms. Gwynn at the hearing on the Emergency Motion was "not only demeaning, but show a pre-disposition and/or pre-determination against her, indicating the Court cannot be fair and impartial in its rulings." The Recusal Motions also contend that I have been selective in enforcing the Local Rules "in a discriminating fashion."

Much of the Recusal Motion is devoted to complaints about proceedings in other courts involving the lawyers who represent the chapter 7 Trustee in this case, Deborah Menotte. Some background is in order. The *Walker* case referred to above has been a protracted slug-fest involving, among others, Ms. Gwynn and Gary J. Rotella, a Ft. Lauderdale lawyer who represents Trustee

---

[4] I note that District Judge Gold has ordered in an appeal styled *Mary Alice Gwynn v. D. Menotte, Trustee, and Jodi and Mark Hussey, Debtors,* Case No. 06-80954-CIV-GOLD/TURNOFF [DE 38 in that case; DE 279 in this case] that Ms. Gwynn "attend 12-hours of Florida State Bar approved courses in Professional Responsibility and/or Legal Ethics in the 12 month period from July 31, 2007 to July 31, 2008." Although Judge Gold subsequently stayed the provision of that Order directing that Ms. Gwynn pay $1,000 in monetary sanctions pending appeal to the Eleventh Circuit, his directive that she attend 12 hours of Florida Bar approved CLE courses in Professional Responsibility and/or Legal Ethics between July 31, 2007 and July 31, 2008 was not stayed.

8

Menotte in this case. It is sufficient for purposes of the matters now before me to note that the animosity between Ms. Gwynn and Mr. Rotella (and his firm) is nonpareil. That animosity has overflowed into every matter in contention between these parties, and may help explain the bitterness of the pleadings and the umbrage which Ms. Gwynn took to my questioning her qualifications.

As part of the Order [DE 285] denying the Emergency Motion [DE 276], I prohibited Ms. Gwynn from filing any pleadings in this Court until she was in compliance with the Local Rules. The hearing on the Emergency Motion was held November 7, 2007, and the Order denying the Emergency Motion was entered November 9th. On November 19th, Ms. Gwynn filed a Notice of Compliance [DE 295], asserting that she was in full compliance with the Local Rules. On November 30th, Ms. Gwynn filed the Recusal Motion. On December 4, 2007, I entered an Order on Gwynn's Purported Compliance with Practice Requirements [DE 302]. The entire text of that Order recites as follows:

> This case is before me without a hearing on Mary Alice Gwynn's Notice of Compliance (the "Notice") [DE 295] purporting to establish that she is in compliance with the provisions of the Order [DE 285] entered in this case on November 7, 2007, which (among other things) prohibited her from acting on behalf of a corporation in this case because she is not qualified to practice in this Court. The Notice was filed on November 19, 2007.
>
> Ms. Gwynn has now filed a verified motion (the "Motion to Disqualify") [DE 299] seeking to disqualify me from acting further in this case. The Motion to Disqualify has been set for hearing in the ordinary course on December 17, 2007. In light of the allegations contained in the Motion to Disqualify, which assert that my impartiality might reasonably be questioned, it would be inappropriate for me to consider the Notice or to act in respect of any matters in this case until such time as I have ruled on the Motion to Disqualify. In the event that I grant the Motion to Disqualify, the Notice should of course be considered by a successor judge in this case. In the event that I deny the Motion to Disqualify, the Notice will be considered in due course.

9

Ms. Gwynn filed the Supplemental Motion on December 11, 2007. In it, she contends that I had "had adequate time to respond to Ms. Gwynn's <u>Notice</u> prior to the filing of her <u>Motion for Recusal</u>," and that "for the Court to withhold any ruling for sixteen (16) days, when the Court is well aware that not allowing Creditor, Gwynn, access to file critical, timely pleadings, could have grave impact not only on her practice, but on her personally, and is extremely prejudicial in and of itself." The Supplemental Motion contends "[f]or the Court to delay reinstatement for any reason, and to deny Gwynn's access to the Court to file, in violation of her constitutional rights, is further evidence of prejudgment or bias on the part of this Court, which warrants recusal." Finally, the Supplemental Motion contends (without any citation to evidence) that I am "now working in conjunction with Judge Hyman to ruin her reputation and career, both personally and professionally."

## II. Discussion

The Recusal Motions contend that I should recuse myself from further consideration of this case pursuant to the provisions of Bankruptcy Rule 5004, and 28 U.S.C. §§ 144 and 455. 28 U.S.C. § 144 is clearly inapplicable. It provides as follows:

> Whenever a party to any proceeding *in a district court* makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case, It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Section 144 is applicable only to proceedings "in a district court," and has no application to proceedings before a bankruptcy judge. *Dubnoff v. Goldstein,* 385 F.2d 717, 720 (2nd Cir. 1967); *Ginger v. Cohn,* 255 F.2d 99 (6th Cir. 1958); *Seidel v. Durkin (In re Goodwin),* 194 B.R. 214, 221 (9th Cir. BAP 1996).

By its express terms, Federal Rule of Bankruptcy Procedure 5004 makes clear that the disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455. Section 455(a) speaks in general terms and requires the recusal of a federal judge, including s bankruptcy judge, "in any proceeding in which his impartiality might reasonably be questioned," thus requiring recusal not only where the judge has *actual* bias[5] but also where he or she has acted in such a way as to give the appearance of partiality to a reasonable person. *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 113-14 (7th Cir. 1977). The appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.,* 549 F.2d 1358, 1361 (10th Cir. 1977). It is of no consequence that the judge is not actually biased, inasmuch as § 455 concerns not only fairness to individual litigants but also the public's confidence in the judiciary, which could be irreparably harmed if a case were allowed to proceed before a judge who appears to be tainted. *In re Kensington Intern., Ltd.,* 353 F.3d 211 (3rd Cir. 2003); *on remand* 305 B.R. 175 (D. Del. 2004); *opinion after remand* 368 F.3d 289 (3rd Cir. 2004).

In addition to the general requirement of impartiality contained in § 455(a), § 455(b) requires recusal in specific situations, including where the judge has personal knowledge of disputed evidentiary facts; where the judge personally or through former law partners or associates was involved in the case or has been a material witness concerning it; where the judge or a close relative

---

[5]By contrast, a showing of actual bias is required under 28 U.S.C. § 144.

11

is involved in the case; or where the judge, his spouse, or a minor child residing in his household has either a financial interest in the outcome or any other interest which could be substantially affected by the outcome of the case.

Although none of the specific grounds for disqualification specified in § 455(b) apply here, I think it useful to comment on this last provision, that dealing with "financial interest." A judge is required by § 455(c) to "inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children living in his household."[6] A judge is thus required to recuse him- or herself whenever the judge, his or her spouse, or a minor child living at home owns a single share of stock in a litigant. *Union Carbide Corp. v. U.S. Cutting Service, Inc.,* 782 F.2d 710 (7th Cir. 1986). This requirement may seem extreme, but its fundamental wisdom is perhaps best expressed in the following poem by Benjamin Franklin, writing decades before the American Revolution in *Poor Richard's Almanack:*[7]

### The Complaint

> A Farmer once made a complaint to a Judge,
> My Bull, if it please you, Sir, owing a Grudge,
> Belike to one of your good Worship's Cattle,
> Has slain him out-right in a mortal Battle:
> I'm sorry at heart because of the Action,
> And want to know how must be made Satisfaction.
>
> Why, you must give me your Bull, that's plain
> Says the Judge, or pay me the Price of the Slain.
> But I have mistaken the Case, Sir, says John,

---

[6] This requirement that a judge stay informed about family financial interests precludes judges from placing their assets in blind trusts or similar vehicles. The same restrictions do not apply to those who serve in the Legislative and Executive Branches.

[7] Reprinted in *Fart Proudly: Writings of Benjamin Franklin You Never Read in School,* ed. by Carl Japikse, Enthea Press and Frog Ltd., 2003.

> The dead Bull I talk of, and please you, 's my own:
> And yours is the Beast that the Mischief has done.
> The Judge soon replies with a serious Face:
> Say you so? Then this Accident alters the case.

Section 455 is designed to assure that no federal judge is ever put in a position where his or her financial interests, however minimal, could be cited as having influenced the results of litigation.

As noted above, recusal under § 455(a) is required "in any proceeding in which [a judge's] impartiality might reasonably be questioned," thus requiring recusal where the judge has acted in such a way as to give the appearance of partiality to a reasonable person. A judge's rulings and expressions of opinion generally fail to justify recusal. As the Eleventh Circuit has put it, "adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *Byrne v. Nexhat,* 261 F.3d 1075, 1103 (11th Cir. 2001). Of course judges hold and express opinions about the litigants and issues that they have formed during court proceedings. But as the Supreme Court succinctly stated in *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966): "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source . . . other than what the judge learned from his participation in the case."

*Grinnell* was decided prior to the enactment of the 1974 amendments which create the current version of § 455(a). In *Liteky v. United States,* 510 U.S. 540 (1994), the Supreme Court extended the "extrajudicial source" doctrine in *Grinnell* to recusal under § 455(a). Just prior to his second trial, the criminal defendant in *Liteky* moved to disqualify the judge on the ground that, during the earlier trial, the judge displayed "impatience, disregard for the defense and animosity" toward the defendant. *Id.* at 555. The Supreme Court rejected the contention that recusal was required:

13

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possible show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

All of the matters about which Ms. Gwynn complains in the Recusal Motions, with the singular exception of the allegation that I am "now working in conjunction with Judge Hyman to ruin her reputation and career," an issue discussed below, arise from a single hearing – my first courtroom exposure to this case – on November 7, 2007. I have carefully reviewed the transcript of that hearing and can find nothing that suggests bias, prejudgment, or prejudice. There is nothing in that transcript which could suggest to a reasonable, disinterested observer that I was biased against Ms. Gwynn. I did question Ms. Gwynn about her professional background because I found her pleadings incompetent. Ms. Gwynn contends, and I have no reason to doubt her, that she enjoys an excellent professional reputation in another field of practice. Her practice before me (and before Judges Gold and Hyman) suggest that federal practice, and in particular, bankruptcy practice, are not her métier. In any event, what was presented to me by Ms. Gwynn at the November 7th hearing was incompetent and clearly violative of the Local Rules. That conclusion was drawn solely and exclusively from the pleadings and argument before me. Ms. Gwynn has not suggested that I was influenced by any extrajudicial source.

Ms. Gwynn's suggestion that I am in some sort of conspiracy with Chief Judge Hyman against her must be addressed. I am, of course, not, but that is beside the point. Rumor, suspicion, or innuendo are simply insufficient to support a judge's recusal. As the First Circuit put it:

> [W]hen considering disqualification, the district court is *not* to use the standard of "Caesar's wife," the standard of mere suspicion. That is because the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

*In re Allied-Signal, Inc.,* 891 F.2d 967, 970 (1st Cir. 1989) (Breyer, J.).

Ms. Gwynn's speculation that I am "working in conjunction with Judge Hyman to ruin her reputation and career" is both abject nonsense and the kind of "mere suspicion" which the case law forbids as a basis for recusal.

In the circumstances, no adequate basis for my recusal under 28 U.S.C. § 455 has been stated. The Recusal Motions will be denied. Accordingly, it is **ORDERED** that the Recusal Motions [DE 299 and DE 311] are hereby **DENIED**.

###

Copies to

Mary Alice Gwynn, Esquire
Jay L. Farrow, Esquire

Mr. Farrow is hereby **DIRECTED** to serve a copy of this Order on all parties in interest not identified above and to file a certificate of service